Eco. v. U.K. Aerosols. Good morning, Your Honors. May it please the Court, my name is Marilyn Rea, and I'm appearing on behalf of Valley Forge Insurance Company as intervener and Camdar Global. I'd like to reserve a few moments for rebuttal, if that would be okay. I'll remind you. Thank you. The last time the U.S. Supreme Court addressed a COGSA bill of lading was four and a half years ago in the Norfolk Southern v. Kirby case. And in that case, Justice O'Connor, writing on behalf of the unanimous Court, said three things that are very pertinent to the case that brings us here today. She noted that the Court's touchstone was a concern for the uniformity of maritime contracts such as bills of lading. She said that applying state law to a bill of lading would undermine the general uniformity of maritime law. Lastly, she said that confusion and inefficiency would inevitably result if more than one law were to be applied to a contract such as a bill of lading. Unfortunately, Judge Patel overlooked those very wise words. The question that we're here to address today is whether by language in a COGSA-governed bill of lading, a carrier can impose liability on someone other than the named shipper, on someone that it decides ought to be liable. Judge Patel answered that question, yes. She I'm here to explain why the answer to that question must be no. A bill of lading can serve three purposes. It can be a document of title, it can be a receipt for the goods, and it can be a contract of carriage. And when it serves as a contract of carriage for goods in international commerce, it's subject to COGSA as a matter of law. And a bill of lading, a consignee, is a negotiable document, not unlike a check. And as this Court has recognized in Carman Toole, a bill of lading can be negotiated and transfer hands many times during the voyage of the goods. By its own terms, COGSA applies to the bill of lading contract. It doesn't just apply to the party whose name is in the box labeled shipper. That's a very important point in this case. COGSA was enacted in the 1930s to prevent carriers from overreaching and trying to avoid liability to their customers. COGSA provides the framework for international maritime contracts and it sets forth the duties and obligations of the parties to a bill of There is one small exception, which is not really applicable in this case. And if a carrier issues a bill of lading that has provisions in it that are contrary to the dictates of COGSA, those provisions are void. COGSA doesn't stop applying when the bill of lading is negotiated, but that's the result that Judge Patel reached. She held that once APL's bill of lading was approved, APL was free of the constrictions of COGSA and UG and Camdar had no protection. They were held liable for clauses that were not valid when the bill of lading was originally issued. Neither Judge Patel nor APL disagreed that paragraphs 9 and 19 would have been void to impose liability without fault. Let's stop there. How does clause 9 impose liability without fault? It imposes it because it tells the merchant that they're liable for anything that happens to ship or packed goods. It says if such loss, damage, liability or expense has been caused by. It has a causal link in there. That's true, but it doesn't say caused in part or if there's both caused by the carrier and by the shipper. That bill of lading term imposes it strictly on the shipper. Well, I don't see that. I have some trouble seeing that where you have, where you do have a, where you do require a cause here. That's correct. That's correct. So which provision of COGSA does this violate? It violates provision 13043 that pertains to liability imposed without fault. The fact that goods may have suffered damage the way they're packed doesn't necessarily mean the shipper was at fault. Well, 13043 doesn't limit itself to fault. It must be from any cause without the act or neglect as well. Right. So even an act of a shipper, his agents or servants will be sufficient to satisfy 13043. That's correct. And what the intent of that provision is to say that a carrier is not going to be able to recover from a shipper if there's been no fault. The way goods have been packaged is not necessarily indicative of fault. The loss can occur to goods by the way they're packed, but that doesn't mean the carrier has been at fault. The law says, and we didn't address this in this brief, but if goods are packed in a manner that is customary for the industry, they are properly packed. They may have suffered damage due to the way they were packed, but it doesn't necessarily mean that the shipper or his agents were actually at fault. And so there's a very fine distinction. Okay. I want to make sure I understand. You're saying that as long as people follow the customary package rules, whatever the industry standard is for packing a container, if the container then causes damage to the carrier, that as long as they packed it okay, they're not liable to the carrier? Yes. Because under that section there must be some fault. And the standard is Okay. Let's suppose in the hypothetical I'm giving you that the carrier handled the container in the way in which the carrier should handle the container. The carrier issued, conducted the container through the ordinary standard of care. Right. Now, how do we allocate that if the packaging of the container has in some way caused damage to the carrier? Well, under the law, if goods are packaged in a way that is customary for the industry, it's considered to be properly packed. This analysis comes up when carriers want to assert a defense under COGSA that they're not liable because the goods have been improperly packed. And case law says that if the goods are packed in a way that is customary for that industry, they're considered to be packed in a reasonable and proper manner. And so that's how that issue comes up. And so it's very possible that goods could be damaged by the way they're packed, but it wouldn't necessarily lead to the fault. But damage to the goods itself is a little different from the situation we have here. Right. Damage to the goods would be an argument between the carrier and the shipper as to who's responsible for the damage caused to the goods. So we have a breakage. Right. But that's not the problem here. The problem is that we have something external now to the container. That is, we have damage to the carrier himself, to something that's leaked out of the container. Now, how is it that the shipper gets to avoid liability on that? Well, the shipper, I think what we're saying... It would seem like there would be a race of soloquiter argument here on the behalf of the carrier. The carrier says, look, you gave us the container. We didn't open it up. You told us it was properly packed. The stuff leaked all over our ship. We're now out $700,000, so you need to pay for this. Well, that's exactly right, except one point we have here is who is the carrier looking at to pay for that? And when you look to see if the carrier has, excuse me, if the shipper has been at fault, we have a standard. We have to have negligence. It doesn't say anything about strict liability. That's what APL is saying. You are strictly liable. And COXA speaks in terms of fault and negligence. And what I'm saying is there must be a standard of care. Did the shipper comply with the standard of care? That's a reasonable standard. And the standards for the industry are considered setting that reasonable care standard. But, you know, it's hard to see how that's contradictory to Paragraph or Clause 9. I mean, it talks about causation. It talks about the manner in which it's been filed, the unsuitability of carriage for goods and things of that nature, and so forth. I mean, it does embrace some of those concepts, don't you think? It doesn't say you are strictly liable for any damage, period. It talks about the manner in which it's backed and so forth. And that implies that you're reviewing the conduct. Yes, and that's exactly what I'm implying because we need a standard of care. The way it's read and the way APL read is a strict liability standard. So why do you say that the clause is void? I just don't read it as a strict liability clause particularly. It's an indemnification clause, but it requires causation. It requires causation to have an excess to a certain act. Well, I can understand the court view that Judge Patel viewed it as potentially void as well. And I just look at it as if it's not. That's your argument that it's void. Yes. Yeah. And I believe it is because I believe it just says you are liable, you must indemnify us no matter what happens. Are you taking the position that in Clause 9 that if you are partially liable that, in other words, there are more than one party liable, that as applied to the law that that's void, in other words, there has to be sole liability, you're excluding the possibility of liability, joint liability? Between the carrier and the shipper? Does that make any sense? Yes. Am I excluding? Yes. I'm not excluding that possibility at all. The carrier sometimes needs to take responsibility and is liable. COGSA imposes certain obligations on the carrier. And in our view, this clause ignores that. It doesn't mention anything about what the carrier did. It just says if the loss is caused by the manner in which the goods are packed, that's the end of the day. But also our concern is whether that clause rightly imposes that obligation on anyone else who didn't pack the goods. And that's really the issue here. Well, I guess that was sort of my question. I put it in artfully. But if there is some fault to be allocated, you're not telling me that if we allocate fault under that, that it has to be an all-or-nothing proposition, there's more than one party that can be the cause of the problem, right? Certainly there can be more than one party because maybe many people participated in loading the container. My point is that clause imposes liability on parties who had nothing to do with the loading of the container. And that's where the Excel case and the Atkins scroll case come into play. In those cases, the court held that the consignee who had no role whatsoever in loading the containers and causing them to be improperly packed should not be held liable for what the shipper did. And that's really what brings us here today. Don't you have a third-party remedy? Why don't you just bring a third-party action? In other words, if the carrier says, look, we're going to look to whoever gave us the container, and the party that delivered the container says, you know something, we're not really at fault. We're just in an intermediate area. We didn't pack it. Well, why don't they have a third-party action against somebody who did pack it? The shipper would certainly be involved in this case. The shipper was out of business. And so what happened was APL looked at the party who was supposed to receive this container, who had nothing to do with the packing whatsoever, and said, you're responsible. We deem you a merchant. We're coming after you. Well, the term merchant, they weren't just deemed a merchant. I think that was a defined term. That's right. But that was a defined term that APL put in its bill of lading. That's not a legal definition. And so the courts have said the protection of COGSA under 13043, that you're not going to be liable without your fault, extends to other parties who have received that bill of lading in the course of commerce. If COGSNA was going to provide you the protection, it seemed to me that it would have said something about that we're going to protect holders. But it doesn't. That's correct. COGSA itself doesn't define the term shipper. There's nowhere to be found in that definition. I have. The shipper is someone who ships, and that particular shipper took a default judgment. It looks like to me that your people are more defined as holders, and if COGSA wanted to protect you, I guess they could have put in something about protecting holders. Can you help me with that? I'm having trouble with the statute. You bet I can. COGSA, as I mentioned, doesn't define shipper. But cases that have decided the principle, in fact, this Court as well, has held that the term shipper must be very broadly construed. This Court has held that parties other than the one that actually tenders the goods can be a shipper. In the Santa Clara case, the Court held the purchaser and the seller of the goods can be shippers. So we're construing that term. My question is a little different. My question is if Congress knew what they're doing, which we always assume, not always properly, but if we assume that, and they wanted to protect people in your position, they would have used the term holder and given you direct protection. Instead of assuming that somehow they'll be shoehorned into shipper, I'm not sure they had in mind protecting holders. Well, I can say in answer to that question that if they didn't have it in mind, we would have total disarray and non-uniformity. But Congress hasn't always done us a favor. Well, true. So we just have to use the language that they have. Is there something? How would you answer that if Congress really wanted to protect your clients, they would have put in the term holder in COGSA and they didn't, so therefore there's no protection? I think I would answer that by saying COGSA itself applies to the bill of lading contract. COGSA doesn't say the provisions of this act only apply to the named shipper. It applies to the contract. There are other parties to the contract besides the named shipper. And so I would argue that it doesn't seem logical to me at least, maybe it was to Congress, that you would have an act of law that would only apply to one person whose name was on that bill of lading. And if we consider the fact that bills of lading transfer hands during the course of commerce, sometimes the bill of lading is in the hand of a bank who finances the purchase of the goods. And in the course of commerce, the bank has to endorse that bill of lading to its customer who's paid under a letter of credit. That means, in accordance with the definition of merchant, that the bank would have to pay the carrier for the cleanup costs. That means that anybody involved. Counsel, I think Judge Bide has a question. Oh, I beg your pardon. Counsel, I'm a little puzzled. I know that you're trying to get your clients in under the definition of shipper in 1304.3, but I'm not sure why that even benefits you. One who's a shipper shall not be responsible unless there's been some kind of act of fault or neglect. But the fault or neglect can be on the part of the shipper, the agents, or the servants, which would include all of your clients. And our clients, it was undisputed, were not at fault. There was nothing in the record to say our client was ever at fault. And so what we have is a strict liability standard. And actually, we have an anomaly here. Because if we construe COGSA to give the benefit only to the named shipper, my client's liable for more. What it says is the shipper shall not be responsible unless there was an act of fault by the shipper, his agents, or his servants. So we sort of anybody in the chain, as long as somebody in the chain was at fault, then the shipper may be held liable. It's when nobody has committed any kind of act of fault that the shipper is home free. I'm not sure that shoehorning your clients in as shippers gets them free from anything here, as long as somebody in the chain there was at fault. And I think that's what that statute is designed to do, is to prevent carriers from saying, you're going to be responsible for anything that happens here. We're not responsible. And that's exactly what APL is saying here. APL has selected in its merchant clause a variety of people who own the goods,  and APL is saying, you're liable. I don't care if you're at fault. Let's join several liability for fault. That's it. But there's no legal basis to say that a consignee who never got the cargo, who never participated in any way, now is facing liability more than the amount of the cargo. Why would anybody ever sign a bill of lading? Our questions have taken you over your time, but we'll give you a couple minutes for rebuttal. Our question is not your answer. Thank you. I'd like to hear from APL. Mr. Donovan.  Thank you, Your Honor. May it please the Court. Charles Donovan of Shepard Mullin, appearing for APL. I'd like to ask to reserve five minutes for rebuttal time, which I'll use really to address. You don't have a cross-claim, though, do you? I'm sorry, Your Honor? You don't have a cross-claim? Did you have a cross-appeal? Actually, it's a separate thing. Oh, you did. Of course you did. That's right. Yeah, and so I'd like to reserve that for that issue, if I may. Yes, Your Honor. May it please the Court. Following up on Judge Wallace's observation, why didn't Congress use the word holder in Section 4.3 of COGSA, 13043? Well, the answer, I submit, is because Congress meant that only a shipper would benefit from the exemption that Section 4.3 provides. But don't take my word for it. Look at COGSA itself. In Section 1B of COGSA, it says, The Bill of Lading regulates the relations between a carrier and a holder of the same. In the same statute, Congress knows when to talk about holders and when to talk about shippers. A holder, of course, means the party to whom the Bill of Lading is issued, and anybody subsequently to whom it's negotiated. These that describes the defendants who are before you on this appeal. They were, in fact, holders of the Bill of Lading. And the Bill of Lading, as Section 1B of COGSA provides, regulated the relations between them and the carrier. But Section 4.3, which states that the carrier may not impose liability on the shipper without act or neglect on the part of the shipper, is a different word. Elsewhere in COGSA, Congress used the word shipper to make it clear that in this statute, shipper means the party who put the goods in the hands of the carrier for ocean carriage. It's as simple as that. Now, the defendants would say, oh, well, COGSA's important and it governs the regulations and we need uniformity and so on. But the fact is that the defendants are trying to make COGSA do too much. COGSA's focus is on carrier liability. It prevents ocean carriers from reducing their liability below a floor COGSA has set. This is not a case about carrier liability. The court found, based on unrebutted evidence that we submitted to the court, that APL was not at fault in connection with this casualty. There was no fault on APL's part. So all the talk about carrier fault and absolving carriers of liability for their own fault and all that, that doesn't matter in this case because there is no fault on APL's part. Let me take you to Clause 9. Is it your position that Clause 9 is a strict liability provision, or is this a fault-based provision? Your Honor, this is an indemnity provision that requires contractually the parties on the other side to indemnify APL. This is not strict liability without fault. This is something to which they've agreed contractually, as Section 1B of COGSA says, by the document that regulates their relations. Your construction of the word has been, or the phrase has been, caused by in Clause 9 suggests that APL might have a duty to show fault on somebody's behalf, or at least show its own innocent actions here. Your Honor, APL did show fault. We showed that the shipper ---- Okay. But my question is just a little different. Is it your intention here that you have that obligation under Clause 9? Yes. I'm not going to argue that you did in this case, but you're going to assume that obligation going forward, that if you have Clause 9s in other provisions, that APL will have to show some kind of duty of at least show that it handled goods in ordinary  Absolutely, Your Honor. And we would also have to show that somebody was at fault. But if somebody, if someone of the parties enumerated as a merchant under the Bill of Lading is at fault, then they're jointly and severally liable for the obligations of any one of them. That's the essence of joint and several liability. Yes, I mean, it's not strict liability in the sense of if there's damage, your client automatically gets paid. It's a fault-based indemnity provision. Exactly. Which is slightly apart from the tort concepts, if you're saying negligence and strict liability. Those are different concepts that apply to this. But it does provide for fault, and it has to be fault with a nexus to something, the manner in which it's packed and so forth. That's correct. And, in fact, Your Honor, the defendants in this case have conceded that the shipper shipped these goods on their behalf. And there are cases that hold, and Professor Sorkin in his treatise states, that so long as the shipper agrees to customary Bill of Lading terms, he's authorized to bind the other parties in the transportation endeavor to the contract, meaning the intermediate and subsequent holders of the Bill of Lading, which is exactly what happened in this case. This Bill of Lading binds them to indemnify APL for the fault of the shipper, who improperly packed the goods. We submitted evidence, again, unrebutted, that the cause of this damage, of the leakage of this cargo and the subsequent expense that APL incurred, was that the container wasn't packed properly. That wasn't APL's fault. That was the shipper's fault, who shipped these goods on behalf of the defendants. And it makes perfect sense under COGSA and, indeed, as a matter of policy, to make cargo liable to the carrier under these circumstances. It's not within my client's power even to open this sealed container to check the packing. It comes with a seal on it. We can't even open it. It's up to cargo to ensure that the goods are safely packed and available for shipment. There's not the slightest hint in any of the evidence in the record below that APL did anything wrong to cause the damage that this occasioned. I think that sums up my position, and I'd be happy to answer any further questions. I'm afraid it's not going to come up, because your adversary is out of time. So I want to ask you a question about attorneys' fees. Yes, Your Honor. The district judge concluded that you did not give reasonable notice because the reference to Singapore law did not occur as regards attorneys' fees until your petition for attorneys' fees. Your argument is, I understand it, that there was some mention of it someplace in the case, and that's sufficient. I think what the district court was saying is it isn't enough that there is something in the Bill of Lading saying if nothing else applies, Singapore law applies, that you had to give notice to the opposition that you're going to rely on Singapore for attorneys' fees, and therefore she wouldn't allow it. And then we have to decide, as I understand the standard review, whether that was an abuse of discretion. Well, Your Honor, I respectfully disagree, because there's no question that we gave notice in the record that we would rely on Singapore law. For attorneys' fees. No. But what we said was the Bill of Lading provides for the application of Singapore law. Now, the Carriage of Goods by Sea Act, by its own terms, supplants any other law and applies to all shipments into or out of the United States. The parties cannot choose a different law than COGS. It's compulsorily applicable to this shipment. It so happens that Singapore has the same statute. The Carriage of Goods by Sea Act is the U.S. version of the Hague Rules, which is an international convention, the Brussels Convention on Bills of Lading, so that Singapore law on Bills of Lading and U.S. law on Bills of Lading are the same. So there was no need to address those differences insofar as the issues regarding the defendant's liability for APL's damages are concerned. But on attorneys' fees, it's a different matter. And on the very first substantive brief we filed, we stated that our addressing these points under U.S. law did not constitute a waiver of our right to contend that Singapore law governed other issues in the case. When you say your first responsive brief, you're not talking about your brief dealing with attorneys' fees. This was the first brief in the case? Correct. This was our brief in opposition to the defendant's first motion for summary judgment. And we raised that. And then we raised it again in response to their second motion for summary judgment. Each time, we reserved the right to contend that Singapore law governed. Now, admittedly, we did not say we reserved the right to contend that Singapore law governs attorneys' fees, damages, alimony, or anything else, because we didn't know what issues would possibly be left over. Obviously, if she decided in the defendant's favor, we wouldn't have to raise the issue of attorneys' fees because she would have decided that COGS had compulsorily applied to everything. Well, through the time period that you were defending against the opposition on the primary issue, you were dealing with American law. You never got to Singapore law. That's true. So what Judge Patel is saying is that there was not reasonable notice that you were going to bring it up in the attorneys' fees part. Now, how do you – the question is not an easy one, and certainly it isn't a slam-dunk either way, but because the standard of review is abuse of discretion, how would you go about framing an opinion, if you were going to write the opinion, that she abused her discretion because you had at least mentioned it earlier that you were relying, even though not specifically, on attorneys' fees? Well, Your Honor, I think – and I hate to accuse Judge Patel of anything approaching an abuse of discretion, but to the extent she abused her discretion, I think it was finding that we had not given notice when, in fact, we had. And then the question becomes, was the notice that we gave very early on in this case adequate? And as we've pointed out in our briefing, that's a very low standard. The Second Circuit in the Raciones case recently decided that the – that after four years of discovery, much, much later in the case than when we raised the issue here, the party who was raising the issue of foreign law had said it might be governed by Finnish law, might be governed by Korean law, might be governed by English law. That was enough. That was enough to just say we think it might be governed by one of these three Now, here we're talking about a very simple issue. Who pays – are we going to have the English rule on attorneys' fees, or are we going to have the American rule on attorneys' fees? This is not rocket science. This is a simple binary issue. And raising it even at the – at the very late stage, even if one were to concede – conclude that raising it even at the very late stage that we did, it's hard to see how the other side is prejudiced. So it was mentioned you indicated twice. Correct. During your briefing. Yes, Your Honor. And the first time it was mentioned was your first subsidy brief. And when was the second time? In – I don't know the exact date off the top of my head, Your Honor, but I could supply it. No, but what was it in connection with it? It was in response to, I believe, the second motion for summary judgment that the DEA defendants made. Okay. And I think what Judge Patel is saying is that there would have to be some research done, and they didn't have a reasonable opportunity to research what needs to be done under application of Singapore law, if I understand it correctly. I think that's right, Your Honor. That's what she concluded. I wouldn't necessarily say that I agree with that because, as I pointed out, it's a pretty simple – this principle is a pretty simple one from a legal standpoint. Was there any issue dealing with Singapore law other than whether you follow the English law – the English law method or the American law method? No. That was it? That was it. Okay. Any further questions? Thank you, Counsel. I'm afraid we took up your time for rebuttal and exhausted it with our questions, so we'll have to forego rebuttal. But we have your arguments in hand, and I think they're well presented by both parties today. So thank you both very much. Thank you.
judges: Wallace, Thomas, Bybee